JOSEPH P. RUSSONIELLO (CASBN 4432)
United States Attorney

BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division

GREGG W. LOWDER (CASBN 107864)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone:  (415) 436-7044
   Fax:  (415) 436-7234
   Email: Gregg.Lowder@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>   v.<br><br>ANTHONY FORTE,<br><br>    Defendant. | No.  CR 05-0588 MMC<br><br>**UNITED STATES' BRIEF RE: HEARING ON REVOCATION OF SUPERVISED RELEASE**<br><br>Hearing Date:  April 3, 2008<br>Hearing Time:  10:00 a.m.<br>Court:  Hon. M.M. Chesney |

**I.
INTRODUCTION**

    The U.S. Probation Office charged the defendant with violating six conditions of his supervised release in this defendant's second Form 12 petition.  Per to Fed. R. Crim. P. 32.1(b)(2), this Court scheduled an evidentiary hearing.  The government files this brief to address the evidence and any issues that may arise.

    On November 9, 2005, the defendant pleaded open to two counts of Possession of Stolen Mail, in violation of 18 U.S.C. § 1708, both Class D felonies.  The Court sentenced the defendant to a guideline range sentence of 15 months imprisonment and 3 years of supervised release.

Govt Brief re: Form 12 Violation
CR 05-0588 MMC

On August 18, 2006, BOP released the defendant from custody. The defendant promptly absconded, failing to report for his initial meeting with his probation officer, Octavio Magana. The Probation Office filed the defendant's first Form 12.

The defendant appeared on April 5, 2007 in magistrate court after being arrested in San Mateo. The Magistrate Judge detained the defendant.

On April 25, 2007, this Court revoked the defendant's supervised release based on his admission to absconding. The Court sentenced the defendant to 20 days in custody, followed by six months in the Cornell Corrections halfway house, along with drug testing and treatment.

The defendant spent three months in the halfway house and was terminated after a conflict with another resident. In the following months, the defendant continued to violate his other terms of supervised release, resulting in the current Form 12 petition of January 11, 2008.

The current Form 12 petition alleges that the defendant violated his release conditions in the following manners:

- Count One:    failed to report to his probation officer Octavio Magana three times;
- Count Two:    failed to complete six months at the Cornell Corrections halfway house;
- Count Three:  tested positive for cocaine two times, each time with another drug in his system as well;
- Count Four:   failed to report for drug testing six times and for sweat patch application once, and failed to report for drug treatment five times;
- Count Five:   failed to notify his probation officer of his arrest on December 16, 2007, after being arrested in Vallejo, California;
- Count Six:    left the judicial district without permission, evidenced by his December 16, 2007 arrest in Vallejo (Eastern District of California).

The evidence that the defendant violated his release conditions will be established by the testimony of probation officer Octavio Magana, by documentary evidence of his termination

Govt Brief re: Form 12 Violation
CR 05-0588 MMC                        -1-

from Cornell Corrections halfway house, documentary evidence and testimony of his failure to report for drug testing and also for treatment, and testimony of his out-of-district arrest in Vallejo on December 16, 2007.

The defendant is now a Criminal History Category VI, with multiple violent acts in his past. The government requests that the Court revoke the defendant's supervised release. This brief is submitted to advise the Court as to the evidence the government intends to present and to address fundamental issues of evidence admissibility at revocation hearings.

## II.
## THE EVIDENCE TO BE INTRODUCED TO DEMONSTRATE THE DEFENDANT VIOLATED HIS SUPERVISED RELEASE CONDITIONS AGAIN

**A.    General Law of Supervised Release Violation Hearings**

In *U.S. v. Hall*, 419 F.3d 980 (9th Cir. 2005), the Ninth Circuit addressed the evidentiary parameters of supervised release hearings. The Court ruled the holding in *Crawford v. Washington*, 541 U.S. 36, 52 (2004), that the Sixth Amendment Confrontation Clause gives criminal defendants the right to confront "testimonial" witnesses at criminal trials, did not extend to revocation hearings:

> We reject [the] assertion that *Crawford* extends the Sixth Amendment right to confrontation to revocation of supervised release proceedings. "We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). See also *Gagnon v. Scarpelli,* 411 U.S. 778, 782 (1973). Because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions" the full protection provided to criminal defendants, including the Sixth Amendment right to confrontation, does not apply to them. *Morrissey,* 408 U.S. at 480.

*Id.* at 985.

The Court reasoned that there is no significant difference between parole hearings and supervised release hearings. "Parole, probation, and supervised release hearings are constitutionally indistinguishable and are analyzed in the same manner." *Id.* at 985, f. 4.

While not subject to the Sixth Amendment's Confrontation Clause, supervised release hearings do afford some level of due process rights to the releasee. A releasee is afforded the

right to confront witnesses against him or her unless the government shows good cause for not producing the witness. *Id.* at 986. In a situation where a witness is not available, the Court weighs the releasee's interest in the right to confrontation against the government's good cause for denying it. *Id.* The two primary factors in the analysis are the importance of the hearsay evidence to the Court's ultimate finding of revocation and the nature of the facts to be proven by the hearsay. *Id.*

Evidence that falls within an already established hearsay exception for a criminal trial is admissible at a supervised release hearing. "Although the Federal Rules of Evidence do not strictly apply to revocation hearings, [citation omitted], long-standing exceptions to the hearsay rule that meet the more demanding requirements for criminal prosecutions should satisfy the lesser standard of due process accorded the respondent in a revocation proceeding." *Id.* Admissibility at a revocation hearing "'should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial.'" *Id.*, citing *Morrissey,* 408 U.S. at 489.

Federal Rule of Evidence 803(6) provides an established exception to the hearsay rule for admissibility of business records and other similar records at criminal trials. A "Record of Regularly Conducted Activity" is admissible if: 1) a record or report "in any form" 2) of an act, event, condition, opinion or diagnosis 3) made at or near its time 4) by a person with knowledge, or from information transmitted by a person with knowledge, 5) if the record is kept in the course of a regularly conducted business activity, 6) if it is the regular practice to keep such record, 7) as shown by the testimony of the custodian or other qualified witness, 8) unless the source of information or method or circumstances of preparation indicate a lack of trustworthiness.

Federal Rule of Evidence 803(8) similarly provides an established hearsay exception for a public record. "Public records and reports" are admissible if they are 1) records or reports, in any form, 2) of a public office or agency, 3) setting forth the activities of the office, or 4) setting forth matters observed pursuant to duty imposed by law as to which there was a duty to report, exclusive of police officers or other law enforcement personnel in criminal matters, or 5) setting forth factual findings against the government in criminal cases from an investigation made

pursuant to authority granted by law, 6) unless the sources of information or other circumstances indicate a lack of trustworthiness.

Certification in the form of authentication and self-authentication will be pursuant to Federal Rule 901 and 902(11).

**B.    The Evidence Of The Defendant's Supervised Release Violations**

    **1. Count One:    Failure to Report to his Probation Officer**

Probation Officer Octavio Magana has continuously been the probation officer to which the defendant has been assigned. P.O. Magana met the defendant in the probation office on June 28, 2007, and at the end of that meeting he notified the defendant that his next appointment was July 19th. The defendant failed to appear on July 19th.

The defendant was terminated from the halfway house on July 21st and instructed to appear at the probation officer's office on July 23rd. He did so.

After appearing by instruction on August 1st at the probation office, P.O. Magana instructed the defendant to appear on August 3rd to discuss residential programs the defendant would agree to attend. On August 3rd, the defendant did not appear at the scheduled time, but instead left a voicemail that he was attending a scheduled medical appointment. Upon receiving the voicemail, P.O. Magana called the defendant back on his cell phone and instructed the defendant to report to the probation office immediately after the appointment. The defendant failed to report.

After telephone calls from the probation officer, the defendant met with P.O. Magana at the probation office on August 24th. At the end of the meeting, P.O. Magana instructed the defendant to appear on September 4th. The defendant failed to appear on that date.

On September 7th, the defendant called and left a voicemail message that he would report on September 10th. He failed to do so. Probation Officer Magana called the defendant on September 11th and instructed him to report that day, which he did.

    **2. Count Two:    Failure to Complete Six Month Term at Cornell Corrections Halfway House**

Govt Brief re: Form 12 Violation
CR 05-0588 MMC                      4

Maria Richards is the director of Cornell Corrections halfway house.  The defendant entered the halfway house on April 27, 2007 and was terminated from the halfway house on July 21st.  The termination arose from an altercation(s) the defendant had with another resident at the halfway house, to the point that personal safety became an issue and the defendant was terminated.  The defendant was apparently suffering form anxiety and depression at the time of his termination.[1]

### 3. Count Three:   Testing Positive for Cocaine and Hydrocodone on July 27, 2007; Cocaine and Marijuana on December 12, 2007

Probation Officer Magana acquired the defendant's urine sample during an office visit on July 27, 2007.  Following protocol, he sent the sample for testing to Kroll Laboratories, the lab which the U.S. Probation Department contracts with to analyze offender urine samples.  The lab received the sample on July 30th and reported the results of its tests on August 2nd.  The results were documented, and the documentation in the form or a certified copy of the results will be presented at the hearing.  The results reflect that the defendant tested positive for cocaine metabolite and for the opiate hydrocodone.

A sweatpatch test was applied on the defendant on December 5, 2007 and removed December 12th.  The lab test results indicate that the defendant tested positive for cocaine and marijuana.

### 4. Count Four:   Numerous Failures to Report for Testing and Treatment

Probation Officer Magana explained the notification procedures for random drug testing to the defendant on July 27, 2007.  The instructions were simple: call a number between the hours of 5 p.m. and 7 a.m. everyday and listen to see if he is required to provide a urine sample the following day.  These instructions are memorialized in writing, and are signed and dated by both the defendant and Probation Officer Magana.

Sharper Future is the contractor with the U.S. Probation Office to provide drug treatment

---

[1] Be advised that Ms. Richards is injured and off work, and may not attend the hearing.  The government can advise the Court as to her comments, if deemed appropriate.

Govt Brief re: Form 12 Violation
CR 05-0588 MMC                                    5

and testing.  It is located on Market Street, San Francisco, and the head of the San Francisco office is therapist and coordinator Shana Barnes.  Shana Barnes is responsible for keeping of the records of Sharper Future.  Sharper Future records reflect that the defendant was notified to show for testing and thereafter failed to show on the following dates:  8/16/07, 9/10/07, 9/14/07, 9/22/07, 9/27/07, 10/08/07, 10/13/07 and 10/22/07.

The defendant also failed to show for sweatpatch application, after personal notification, on 11/7/07.

Billy Ellis was the assigned Sharper Future therapist for the defendant. He is a 20 year veteran of the counseling profession.  Billy Ellis met the defendant in the early summer of 2007 and thereafter set standing meetings for the defendant to appear, at the same time and at the same place every week.  Billy Ellis also engaged in the practice of notifying the defendant at the end of each meeting as to the time of the next meeting, and then telephoning the defendant on his cell phone hours before the next meeting to instruct him to attend the treatment meeting.  The defendant nevertheless failed to appear at treatment sessions on the following days:  6/13/07, 6/27/2007, 8/23/07, 10/4/07, 10/11/07, 10/23/07, 11/13/07, 11/20/07, 12/4/07 and 12/18/07.

**5.     Counts Five and Six:          Traveling Out of District Without Permission and Failing to Notify PO After Arrest**

The defendant was restricted from traveling out of district without prior permission. Vallejo Police Detective Leslie Bottomley will testify that the he responded to a robbery call in Vallejo on December 16, 2008 and arrested the defendant near the scene.  He recognized the defendant and knew the defendant had an outstanding state parole warrant for absconding.

Probation Officer Magana was never notified by the defendant of the arrest.  He learned of the arrest through a CLETS system notification on December 18, 2007.

///

///

///

///

Govt Brief re: Form 12 Violation
CR 05-0588 MMC                             6

# III.
# CONCLUSION

Based on the evidence produced, the government requests that the Court find the defendant in violation of his conditions of release and revoke his supervised release.

DATED: April 2, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

_____/s/_____
GREGG W. LOWDER
Assistant United States Attorney

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee of the office of the United States Attorney, Northern District of California and is a person of such age and discretion to be competent to serve papers. The undersigned certifies that she caused copies of

**UNITED STATES' BRIEF RE: HEARING ON REVOCATION OF SUPERVISED RELEASE**

in the case of **UNITED STATES v. ANTHONY FORTE, CR 05-0588** to be served on the parties in this action, by placing a true copy thereof in a sealed envelope, addressed as follows which is the last known address:

**Claire Leary, Esq.**
**912 Cole Street, Suite 347**
**San Francisco, CA  94117**
**atyleary@aol.com**
*Via Email*

**Octavio Magana**
**United States Probation Office**
**450 Golden Gate Avenue, 17th Floor**
**San Francisco, CA  94102**
*Personal Service*

__X__ (By Personal Service), I caused such envelope to be delivered by hand to the person or offices of each addressee(s) above.

_____ (By Facsimile), I caused each such document to be sent by Facsimile to the person or offices of each addressee(s) above.

_____ (By Mail), I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at San Francisco, California.

_____ (By Fed Ex), I caused each such envelope to be delivered by FED EX to the address listed above.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   April 2, 2008

/s/
RAWATY YIM
United States Attorney's Office

Govt Brief re: Form 12 Violation
CR 05-0588 MMC                -8-